JOSEPH A. TRAPP, Respondent, *v.* FREDERICK N. DU BOIS, Appellant.

*Libel — a letter to a protective trade association, not fairly disclosing the facts, in consequence of which a plumber is placed upon the " cash before delivery list" — it is a privileged communication — express malice must be shown — what is not an act of delinquency — the act of a business manager is that of his principal.*

Upon the trial of an action for libel it appeared that the plaintiff, who was a plumber and gasfitter, purchased a porcelain bathtub from the defendant, who was a dealer in plumbers' materials, and that a dispute arose between the parties as to whether the defendant, under his contract, was required to deliver the bathtub upon the floor of the bathroom, or only at the house in which it was to be installed; that the bathtub was first delivered in the areaway of the house but was finally delivered upon the floor of the bathroom; that on the presentation of the defendant's bill the plaintiff disclaimed liability for an item of eleven dollars, representing the crating of the tub and the extra labor involved in putting the tub in the bathroom, and suggested the bringing of a suit to test his liability; that thereupon, after notice to the plaintiff, the defendant, without disclosing the controversy as to the plaintiff's liability and the fact that the plaintiff was solvent, wrote a letter, referring the matter to an association known as the "Plumbers' Material Protective Association;" that shortly thereafter the plaintiff received from the secretary of such association the following letter:

"DEAR SIR.— As you have failed to settle the claim of F. N. Du Bois for the sum of $11.00, it now becomes my duty to inform you, on behalf of this association, that unless you settle within ten days from this date with the above-named creditor, the members of this association will be notified of the same, and in consequence thereof, you may be unable to purchase any goods from any of them except for cash before delivery. Should you have any reason, of any nature whatsoever, why such notice should not be given, it will be to the

interest of all concerned if you present the same to this association in writing immediately on receipt of this, as it is not the intention of this association to inconvenience an honest debtor. Inattention to this, however, will bring about the consequences above indicated, which I trust you will avoid."

The plaintiff did not answer this letter and was, at the request of the defendant, placed upon the " cash before delivery list" of the association.

The Plumbers' Material Protective Association was formed, among other things, " to diffuse accurate and reliable information among its members as to the *standing of merchants,*" and one of the by-laws thereof made it the duty of the members to inform the association "whenever any delinquency or act comes to their knowledge which *jeopardizes the credit* of any party in the trade."

*Held,* that the letter from the defendant to the association was a privileged communication, and that the plaintiff, in order to recover, must prove express malice, to wit, that the bill was an unjust bill, and that the defendant had reason to believe it was unjust;

That the evidence was sufficient to justify a finding that the defendant had been guilty of express malice;

That the plaintiff's refusal to pay the disputed item was not an act or delinquency which jeopardized his credit within the meaning of the by-law referred to above;

That, under the circumstances, the plaintiff's failure to answer the communication of the association was entirely justifiable;

That the fact that the defendant's letter to the association was sent, not by the defendant personally, but by an under manager of his business, did not relieve the defendant from liability, as a master is liable for willful injury committed by a servant while engaged in the transaction of the master's business.

APPEAL by the defendant, Frederick N. Du Bois, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 7th day of April, 1902, upon the verdict of a jury, and also from an order entered in said clerk's office on the 7th day of April, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Edward C. Perkins* [*Frankland Briggs* with him on the brief], for the appellant.

*John B. Shanahan,* for the respondent.

GOODRICH, P. J.:

The action is for libel published in a letter dated March 19, 1900, written by the defendant to the secretary of the Plumbers' Material Protective Association. The plaintiff recovered a verdict for $200, and from the judgment entered thereon the defendant appeals.

Plaintiff was a plumber and gasfitter, having a place of business in Brooklyn. He had been dealing for several years with the defendant, who was a dealer in plumbers' materials, and contracted through Coleman, one of defendant's employees, to purchase from the defendant for $100 a porcelain bathtub, which was to be delivered at some residence on Clinton street, where the plaintiff was doing plumbing work. The plaintiff testified that the tub was to be placed on the floor of the bathroom. Coleman testified that there was no agreement to put the tub in the bathroom, that it was to be delivered at the house at $100 with an addition of $5 for the crate (the price of which would be credited upon its return). The tub was delivered into the areaway of the house and the plaintiff required its delivery in the bathroom. It was so delivered, and the defendant sent the plaintiff a bill for $111, which included the crate and extra labor for putting the tub in the bathroom. On presentation of the bill, the plaintiff paid $100 and refused to pay the $11. Out of these facts grew a controversy as to the liability of the plaintiff to pay the $11. Plaintiff suggested that defendant should sue him for the amount.

On March 5, 1900, the defendant wrote the plaintiff that, unless the bill was settled, the matter would be referred to the Plumbers' Material Protective Association. This letter was not answered. Defendant thereupon informed the association of plaintiff's failure to settle the bill, and shortly after plaintiff received from the association, under a letter heading showing its officers and membership, the following letter :

" This Association embraces the Manufacturers of and Dealers in Plumbers', Gas and Steam Fitters' Materials, Stoves and Heating Apparatus, Roofers' and Tinners' Materials, Pumps and Pumping Engines, Tanks and all Materials used in lines kindred thereto. * * *

" NEW YORK, *March* 20, 1900.
" MR. JOSEPH A. TRAPP,
" Bklyn., N. Y. :

" DEAR SIR.— As you have failed to settle the claim of F. N. Du Bois for the sum of $11.00, it now becomes my duty to inform you, on behalf of this association, that unless you settle within ten days from this date with the above-named creditor, the members of this association will be notified of the same, and in consequence

thereof, you may be unable to purchase any goods from any of them except for cash before delivery. Should you have any reason, of any nature whatsoever, why such notice should not be given, it will be to the interest of all concerned if you present the same to this association in writing immediately on receipt of this, as it is not the intention of this association to inconvenience an honest debtor. Inattention to this, however, will bring about the consequences above indicated, which I trust you will avoid.

"Yours truly,
"EDW. W. LOWE,
"*Secretary.*
"Per C. B. LOWE."

The plaintiff did not answer this letter and later he was blacklisted, or, as the defendant and the association euphemistically describe it, he was put on the "cash before delivery list" of the association.

The answer alleges that the association was formed "for the purpose of fostering trade and commerce in plumbers' materials and kindred lines of business, to protect it from unjust and unlawful exactions, to reform abuses in trade, to diffuse accurate and reliable information among its members as to the *standing of merchants* and other matters, and for other like purposes;" and that the by-laws provided that it should be the duty of members "to sell only for cash paid before delivery to customers who might have *unjustly failed to meet their trade contracts and obligations,* so long as such failure should continue;" and that the secretary was required to notify all the members of all delinquencies, and that in consequence and at the request of the defendant all the members were notified that the plaintiff was blacklisted.

The defendant claimed that this letter was a privileged communication, and the court so charged, saying that, if the defendant believed the bill was a just bill and if he, in good faith, put the matter in the hands of the association, he was not responsible; and this view is sustained by authority (*Reynolds* v. *Plumbers' Protective Assn.,* 30 Misc. Rep. 709), where the subject was fully considered. A motion for a new trial was denied (53 App. Div. 650).

The court also charged that the plaintiff must prove not only that the bill was an unjust bill but that the defendant had reason to

SECOND DEPARTMENT, NOVEMBER TERM, 1902.        [Vol. 76.

believe it was unjust. In other words, that the plaintiff must prove express malice.

The evidence was sufficient to justify a finding of express malice. The defendant knew that the plaintiff had declined to pay the bill solely on the ground that he was not legally responsible for it, that he had suggested the bringing of a suit to test the question of his liability, and that he was solvent.

One of the by-laws of the association provided that it should be the duty of the members to send information to the secretary " whenever any delinquency or act comes to their knowledge which *jeopardizes the credit* of any party in the trade." The refusal of the plaintiff to pay an item in the bill, for which he denied any liability, is not such an act or delinquency as to jeopardize his credit. The letter of the defendant was within neither the letter nor the spirit of the by-law. Defendant did not disclose to the association the facts of the controversy as to liability and the solvency of plaintiff. He left it to be inferred that the plaintiff was pecuniarily unable to pay a trifling bill of eleven dollars.

Plaintiff's silence under such circumstances and his failure to answer the communication of the association of which he was not a member were entirely justifiable. The association had neither right nor reason to address him the letter of March twentieth. Indeed, it may well be said that it was an impudent interference with the plaintiff's business and that it was promoted and caused by the defendant's communication to the association. Taken in connection with the other circumstances, it afforded ample evidence to justify the jury in finding express malice on the part of the defendant, for he knew that the natural result of his communication to the association would be the blacklisting of the plaintiff.

The defendant's counsel claims that the defendant had no personal connection with the affair and that what was done was done by Haff, his agent; that if malice was proven, it was a willful and malicious tort on the part of Haff, for which the defendant is not liable. It is difficult to see the ground for this suggestion. The letters of March nineteenth and July twenty-eighth, upon which the association acted, are signed by the defendant personally, not by Haff. It is true that Haff said the letters " were sent out under my direction and I had no directions from any one superior or inferior

to me. It was done in the regular routine of my business." As he says that he was " practically the manager under Mr. Blauvelt " of the defendant's business, his acts bring the matter within the principle that a master is responsible for willful injury committed by his servant while engaged in the transaction of the master's business. (*Griswold* v. *Haven*, 25 N. Y. 595, 600, citing 3 Chitty Com. Law, 209 ; *Rounds* v. *Del., Lack. & West. R. R. Co.*, 64 N. Y. 129 ; *Mott* v. *Consumers' Ice Co.*, 73 id. 543.) In the last case it was said (p. 547): " For the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them. There are intimations in several cases of authority that for the willful acts of the servant the master is not responsible. (*McManus* v. *Crickett*, 1 East, 106 ; *Hibbard* v. *N. Y. and E. R. Co.*, 15 N. Y. 455 ; *Wright* v. *Wilcox*, 19 Wend. 343.) But these intimations are subject to the material qualification, that the acts designated ' willful,' are not done in the course of the service, and were not such as the servant intended and believed to be for the interest of the master. In such case the master would not be excused from liability by reason of the quality of the act."

The defendant's motion to direct a verdict in his favor was properly denied as the question of defendant's malice upon the testimony was properly a question for the jury. (*Rounds* v. *Del., Lack. & West. R. R. Co., supra.*)

The court refused the request of the defendant to charge that there was no proof of actual damage and that the jury could not render a verdict for anything more than nominal damages. The refusal was proper. The evidence shows specific instances from which the jury was justified in finding that the plaintiff lost business through the acts of the defendant.

The judgment and order should be affirmed, with costs.

Judgment and order unanimously affirmed, with costs.